Dowd, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PAUL T. WEBSTER, | ) | CASE NO. 5:10 CV 599 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID D. DOWD, JR. |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CITY OF KENT, OHIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Paul T. Webster filed this action under 42 U.S.C. §§ 1983 and 1985 against the City of Kent, Ohio, the Kent Police Department, Patrolman Michael Lewis, Sergeant Ed Wheeler, Patrolman Martin Gilliland, Patrolman Prusha, Patrolman Canfield, Patrolman Schlosser and John Does 1-10.  Plaintiff alleges that falsified evidentiary materials were produced and used during depositions in a previous federal lawsuit.  He seeks federal and state criminal charges against the defendants, injunctive relief, and monetary damages.

Multiple pleadings and dispositive Motions have been filed in this case.  In response to the original Complaint, which contained 127 numbered paragraphs in 22 pages, the Defendants filed a Motion to Dismiss (ECF #4).  Thereafter, the Plaintiff asked the Court to Voluntarily Dismiss Count II of the Complaint (ECF #12) and moved to Strike the Defendants' Motion to Dismiss. (ECF #13)  The Defendants opposed the Motion to Strike the Motion to Dismiss.  (ECF #17)

The Plaintiff then filed an Amended Complaint on May 14, 2010 (ECF #7).  This pleading

expanded the allegations of the original Complaint to 311 numbered paragraphs in 45 pages. No new claims or Defendants were added, but the original claims were separated into three parts, each relating to a deposition in case no. 5:07 CV 1116. The Defendants responded by filing a Motion to Dismiss the Amended Complaint (ECF #8), which was opposed by Mr. Webster. (ECF #16) He also filed a Motion to Strike the Defendants' Memorandum in Support of their Motion to Dismiss. (ECF #24)

On June 2, 2010, the Plaintiff filed a Second Amended Complaint (ECF #9), without leave of Court. This pleading added Officers Canfield, Schlosser, and Prusha as Defendants and lengthened the pleading to 108 pages containing 592 numbered paragraphs. The Defendants filed a Motion to Strike Plaintiff's Second Amended Complaint or Alternatively to Dismiss (ECF #15). Mr. Webster opposed that Motion on June 28, 2010. (ECF #20)

The Plaintiff has now filed a Motion for Leave to File Third Amended Complaint (ECF #19.) The proposed Third Amended Complaint is 143 pages long with 997 numbered paragraphs. It does not add either defendants or claims, but expounds on the information contained in the other pleadings. The Defendants have filed a Memorandum in Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint (ECF # 21). Mr. Webster submitted his Opposition to the Defendants' Response to his Motion to Dismiss. (ECF #23)

Mr. Webster's proposed Third Amended Complaint adds nothing new to this action. It seeks to raise the same claims already set forth in the prior three pleadings and merely adds verbiage to the already lengthy Second Amended Complaint. Because nothing is gained by this amendment and it imposes a significant hardship on the Defendants to respond to this voluminous pleading, the Court **denies** the Plaintiff's Motion for Leave to File a Third Amended Complaint

(ECF # 19).

The Defendants also ask that the Plaintiff's Second Amended Complaint (ECF #9) be stricken because it did not comply with Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides that a party may amend its pleading once as a matter of course before being served with a responsive pleading. FED R. CIV. P. 15(a)(1). Thereafter, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely grant leave when justice so requires. FED R. CIV. P. 15(b)(2).

Mr. Webster's Second Amended Complaint (ECF #9) is distinct from his first Amended Pleading (ECF #7) because it adds three defendants. Those three defendants are represented by the same counsel as the defendants already named in the action. Moreover, the claims stated in this pleading are not substantially different from those in the prior pleadings. Although Mr. Webster did not comply with the requirements of Rule 15, the Court will accept filing of the Second Amended Complaint. The Defendants' Motion to Strike the Second Amended Complaint (ECF #15) is **denied only** to the extent necessary to reflect the Court's acceptance of the filing of this pleading. Because the Court is accepting the filing of the Second Amended Complaint, the Defendants' Motion to Dismiss the Original Complaint (ECF #4) and Motion to Dismiss the First Amended Complaint (ECF #8) are **denied as moot**. The Plaintiff's Motion to Voluntarily Dismiss Count II of the Original Complaint (ECF #12), Motion to Strike the Defendants' Motion to Dismiss (ECF #13) and Motion to Strike the Defendants' Memorandum in Support of the Defendants' Motion to Dismiss (ECF # 24) are also **denied as moot**.

The Court now turns its attention to the Defendants' Motion in the Alternative to Dismiss the Second Amended Complaint (ECF #15). For the reasons set forth below, that Motion is

**granted** and this action is dismissed.

# I. Background

*A. Arrest*s

Mr. Webster was arrested on two occasions by the City of Kent Police Department. The video tapes of those arrests are the subject of this law suit. Mr. Webster, however, does not provide many factual allegations about these incidents. As it is necessary to have some information concerning these events, the Court will refer to another civil action Mr. Webster filed in 2007 which was also based on the arrests. *See Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007)(Lioi, J.). In granting summary judgment in favor of the Defendants, United States District Judge Sara Lioi, made findings of fact. The Court takes notice of these findings of fact and uses them only to provide a context for the Plaintiff's claims in this action.

*1. April 15, 2005 Arrest*

Mr. Webster's first arrest occurred in the early morning hours of April 15, 2005. While on patrol, Officer Schlosser observed Mr. Webster engaging in actions which suggested to the officer that Mr. Webster was using marijuana. He also walked with an uneven gait and appeared to be intoxicated. The officer flashed the cruiser's overhead lights and claimed he observed Mr. Webster conceal a marijuana pipe in his pants. The Officer parked his vehicle and approached on foot.

The cruiser's video camera captured the events that transpired that morning. The Officer asked Mr. Webster his name and commented that he appeared to have difficulty walking. Mr. Webster admitted he had been drinking. The video shows that Mr. Webster became loud and agitated, shouting, "I'm a mad man, I'm crazy." *See Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007)(Lioi, J.)(ECF # 45, Ex. A.). He also indicated that if the Officer made him

angry, bad things would happen. *Id.*

A second officer, Officer Prusha, arrived on the scene. One of the officers offered to drive Mr. Webster home, but he declined, believing it a ruse to get him in the police car. He was then patted down for weapons and ordered to place his hands behind his back. He refused and attempted to run into a nearby bar. He was tackled by officers who subdued him using tasers and pepper spray. They were able to put him in handcuffs and place him in the back of the police cruiser. At some point, he spit at the officers. He continued to remain combative, and was placed in a restraining chair when finally arriving in the detention area of the jail. Mr. Webster alleges that the tape of this incident was altered at a later date to conceal an assault by the officers.

Mr. Webster was charged in the Portage County Court of Common Pleas, Case No. 2005 CRB 00581, with resisting arrest, possession of drug paraphernalia, and disorderly conduct. He was convicted on all charges.

*2. September 9, 2005 Arrest*

Kent Police responded to a report of an intoxicated person attempting to sell marijuana outside of Panini's bar. An informant, Michael Rhodes, telephoned police to complain that after the bar closed, he observed a man pull out a bag of marijuana and offer to sell it to the patrons as they left the bar. Officer Wheeler responded to the call and was the first on the scene. Once again, the events that transpired were captured on tape. He stated he observed Mr. Webster frantically trying to put something down the front of his pants. The officer noticed Mr. Webster's eyes were glassy and could smell both alcohol and marijuana on his person. Officers Gilliand and Lewis arrived on the scene. The video shows Officer Gilliand searching through Mr. Webster's pockets. When the marijuana was located in the front of Mr. Webster's pants, he began to struggle. Mr.

Webster is heard on the tape making several threatening comments to the officers as he continued to resist. He was eventually wrestled to the ground where the tape shows Officer Gilliand retrieving a marijuana pipe from Mr. Webster's pants. Mr. Webster continued to struggle. He alleges that one of the officers applied pressure to his throat effectively choking him. During this time on the tape he is heard calling the officers "faggots." *See Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007)(Lioi, J.)(ECF # 45, Ex. B). Mr. Webster contends that this tape also was altered to conceal the actions of the officers.

At the police station, Mr. Webster continued to resist. After being placed in a cell, he attempted to commit suicide by hanging himself with his shirt tied around his neck. Another inmate alerted the officers in the holding area and Mr. Webster's shirt was confiscated. The Defendants contended he continued to resist and a taser was used to subdue him. He was placed in a restraint chair.

Mr. Webster was charged in the Portage County Court of Common Pleas, Case No. 2005 CRB 01820 K. He pled guilty and was convicted of criminal damaging, obstructing official business, resisting arrest, possession of drugs, and disorderly conduct. *See Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007)(Lioi, J.)(ECF # 52, Ex. C).

*B. 2007 Civil Rights Lawsuit*

Mr. Webster filed a civil rights action in the United States District Court for the Northern District of Ohio on April 26, 2007 against the City of Kent, the City of Kent Police Department, Kent Police Chief James Peach, Officer Wheeler, Officer Schlosser, Officer Canfield, and John Does # 1 through 10. That case, *Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007) was assigned to the Honorable Sara Lioi. In his Complaint, Mr. Webster raised nine causes

of action under federal and state law. Count I alleged that the defendant Officers used excessive force to secure his arrests in April and September 2005 and the municipal defendants failed to stop the misconduct. Count II also alleged that the officers intentionally used excessive force and the municipal defendants failed to stop the officers. Count III alleged an assault by the officers and Count IV raised a claim of battery against these same officers. In Count V, Mr. Webster alleged that the defendants violated his Eighth Amendment rights. Count VI asserted a claim for intentional infliction of emotional distress. Count VII claimed the municipal defendants were negligent in their hiring practices. Count VIII set forth a claim for false imprisonment and Count XI asserted a claim for malicious prosecution.

Mr. Webster voluntarily dismissed most of his claims in that action. On November 15, 2007, the Court approved his Motion to Voluntarily Dismiss Counts II, III, IV, VIII, and IX. Thereafter, Mr. Webster filed a second Motion to Voluntarily Dismiss Counts V and VII, without prejudice. He also requested dismissal of all the claims pertaining to the April 2005 arrest and all remaining claims against the City of Kent Police Department. That Motion was granted. That left Count I, asserting the use of excessive force pertaining only to the September 2005 arrest, and Count VI, asserting intentional infliction of emotional distress with regard to the September arrest. The Defendants filed a Motion for Summary Judgment, which was granted, and the case was dismissed on September 12, 2008. Mr. Webster filed an appeal of that judgment, but voluntarily dismissed it on January 11, 2010.

*C. Present Action*

Plaintiff's Second Amended Complaint is separated into three parts, each pertaining to a deposition that took place in Case No. 5: 07 CV 1116. The first part concentrates on a deposition

taken March 21, 2008.  Mr. Webster indicates he is asserting claims under 42 U.S.C. § 1983 for denial of due process and equal protection in connection with the use of the video tapes which he claims were altered.  He then lists 13 counts for relief.  Count I asserts a claim for misprison of felony under 18 U.S.C. § 4.  Count II asserts a claim for conspiracy against civil rights under 18 U.S.C. § 241.  Count III states a cause of action for deprivation of civil rights under 18 U.S.C. § 242.  Count IV contains a claim for perjury under 18 U.S.C. §1621.  Count V asserts a claim for false declaration before a grand jury in violation of 18 U.S.C. §1623.  Count VI contains a claim for perjury under Ohio Revised Code §2921.11.  Count VII asserts a claim for obstruction of justice under Ohio Revised Code § 2921.32.  Count VIII asserts a violation of Ohio Revised Code §2913.32 for criminal simulation.  Count XI alleges a violation of Ohio Revised Code § 2013.42 pertaining to tampering with records.  Count X asserts a claim of intimidation under Ohio Revised Code § 2921.03.  Count XI states that the defendants violated 18 U.S.C. §1512 pertaining to tampering with witnesses.  Count XII contains a claim for interfering with civil rights under Ohio Revised Code § 2921.45.  Count XIII asserts a violation of Ohio Revised Code § 2921.12.

The second part of the first Amended Complaint also concentrates on the deposition taken March 21, 2008 in the course of Mr. Webster's first federal civil rights action.  This part asserts claims under 42 U.S.C. § 1985 in connection with the use of the allegedly altered video tapes at the deposition.  He lists the first 12 counts stated in the first part of the Second Amended Complaint.

The third part of the first Amended Complaint focuses on a deposition taken on January 15, 2008 in the course of Mr. Webster's first federal civil rights action by attorney William E. Pfau. In this portion, Mr. Webster states he is raising claims under 42 U.S.C. § 1985(2).  He then lists the first 9 counts stated in the first part of the pleading.

## II. Analysis

A Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and construed most favorably toward the non-movant. *Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

Mr. Webster indicates that he is asserting claims for use of allegedly modified video tapes during depositions taken on January 15, 2008 and March 21, 2008 in *Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007). The Defendants contend that these claims are barred by the applicable statute of limitations period and by the doctrine of collateral estoppel and issue preclusion. The Defendants also assert that the Plaintiff failed to state a claim upon which relief may be granted.

*A. Statute of Limitations*

The Second Amended Complaint asserts claims under 42 U.S.C. §§ 1983 and 1985, as well as various federal and state criminal statutes. Since no statute of limitations is contained in § 1983 or §1985, state law provides the relevant time limitation. In Ohio, a two-year statute of limitations

applies to § 1983 claims. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir.2003)(citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989) (en banc)). Similarly, the statute of limitations for claims under 42 U.S.C. § 1985 is two years. *Savage v. Unknown FBI Agents*, 142 F.3d 436, 1998 WL 39318 *1 (6th Cir. Feb. 10, 1998)(unpublished) (citing *Harris v. Board of Educ.*, 798 F.Supp. 1331, 1345 (S.D.Ohio 1992)); *see Ashiegbu v. Purviance*, 74 F.Supp.2d 740, 747 (S.D. Ohio 1998). Mr. Webster asserts that the statute of limitations period began to accrue on April 7, 2008, the date on which he received a final report from forensic expert, Steven Cain, indicating his opinion that the tapes were modified. The Defendants contend that Mr. Webster received correspondence from Mr. Cain on December 4, 2007 suggesting that the video tapes may have been altered. They also indicate that Mr. Webster insisted at his depositions that the video tapes were altered. They assert the statute of limitations began accruing on December 4, 2007.

The date on which the statute of limitations begins to run in a civil rights action is a question of federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Ordinarily, the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id*. at 273. "In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). The crux of each of the claims Mr. Webster asserts in this action is that the video tapes of his arrests were altered to conceal the actions of the officers and place him in a less favorable light. Plaintiff's expert, Mr. Cain, indicates in December 2007 that the tapes have questionable authenticity. Mr. Webster protests in the January 15, 2008 deposition that the tape is fake. He states "this tape is garbage. They've modified it. ... It's out of sequence."  (ECF # 16, Ex. G, pp. 85-86.)  At this point, Mr. Webster clearly was aware of a

-10-

potential problem with the tapes and any civil rights action arising from the modification of the tapes began to accrue no later than January 15, 2008. This action was filed on March 22, 2010, well beyond the expiration of the statute of limitations periods for filing an action under either § 1983 or § 1985 to assert modification of the tapes.

Mr. Webster asserts separate claims for the use of or reference to the tapes in two depositions. Even if this Court were to use the dates of the depositions as the dates on which the statute of limitations for these claims began to accrue, this action would still be untimely. Those depositions were held on January 15, 2008 and March 21, 2008 respectively. This action was filed on March 22, 2010, beyond the expiration of the statute of limitations for an action under § 1983 or § 1985.

*B. Res Judicata*

Mr. Webster claims that these modified tapes were used in depositions taken during pretrial discovery in *Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007). He indicates that these tapes likely affected the outcome of that case and denied him due process and equal protection. The docket in case no. 5:07 CV 1116 indicates that Mr. Webster had until April 4, 2008 to identify and supply an expert report for that case. Mr. Webster did not file his expert report, however, his attorney did argue in his Response in Opposition to Defendants' Motion for Summary Judgment that the tapes were altered. *Webster v. City of Kent, et. al.*, No. 5:07 CV 1116 (N.D. Ohio 2007)(ECF # 56). Thereafter, Mr. Webster voluntarily dismissed most of his claims. The remainder of his claims were considered by the Court and dismissed on summary judgment. Mr. Webster filed an appeal of that action on September 22, 2008. When the appeal was called for oral argument on December 3, 2009, his counsel indicated to the court that Mr. Webster wished to

withdraw the appeal. Three months later, he filed the within action to assert irregularities in the discovery process of 5:07 CV 1116 and to attack the validity of that judgment.

The doctrine of *res judicata* dictates that a final judgment on the merits of a claim precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the court and every issue or defense that should have been raised in the previous action. *Id.* The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224 (6th Cir. 1981). A subsequent action will be subject to a *res judicata* bar only if there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action. Both of these requirements are met in this case. Mr. Webster could have raised these issues in the course of the case in which the depositions were taken. He could have questioned the validity of that judgment on appeal by raising his concerns about the evidence considered to obtain that judgment. He did not assert these claims in that action. He is therefore precluded from litigating this matter for a second time.

### C. 42 U.S.C. §1985

Moreover, even if Mr. Webster's claims under 42 U.S.C. § 1985 were not fatally flawed at the inception by the doctrine *res judicata* and by the expiration of the statute of limitations, he fails to state a claim for relief under this statute. To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to 42 U.S.C. § 1985, a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person

or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)). The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)).  Mr. Webster mentions that he suffers from a mental illness.  The Second Amended Complaint contains no allegation suggesting that this condition in any way motivated the actions of the Defendants. Simply alleging the existence of a conspiracy is insufficient to state a claim for relief under § 1985.

*D. Criminal Statutes*

Finally, Mr. Webster lists multiple Counts for relief based on federal and state criminal statutes.  He asks the Court to appoint a special prosecutor and award him monetary damages. These criminal statutes provide no private right of action. *See U.S. v. Oguaju*, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994); *Roemer v. Crow*  993 F.Supp. 834 (D.Kan.1998); *Shahin v. Darling*, 606 F.Supp.2d 525 (D. Delaware 2009).  Furthermore, criminal actions in the federal courts are initiated by the United States Attorney. 28 U.S.C. § 547; Fed. R. Crim. P. 7(c).  This court is simply unable to grant the relief requested by Plaintiff.

### III.  Conclusion

For all the foregoing reasons, the Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF #19) is **denied**.  The Defendants' Motion to Dismiss the Original Complaint (ECF #4) and Motion to Dismiss the First Amended Complaint (ECF #8) are **denied as**

**moot**. The Plaintiff's Motion to Voluntarily Dismiss Count II of the Original Complaint (ECF #12), Motion to Strike the Defendants' Motion to Dismiss (ECF #13) and Motion to Strike the Defendants' Memorandum in Support of the Defendants' Motion to Dismiss (ECF # 24) are also **denied as moot**. The Defendants' Motion to Strike the Second Amended Complaint (ECF #15) is **denied in part** to the extent necessary to reflect the Court's acceptance of the filing of this pleading. The Defendants' Motion in the Alternative to Dismiss the Second Amended Complaint (ECF #15) is **granted** and this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

       IT IS SO ORDERED.


July 13, 2010                            *s/David D. Dowd, Jr.*
Date                                      DAVID D. DOWD, JR.
                                            UNITED STATES DISTRICT JUDGE

---

[1] 28 U.S.C. § 1915(a)(3) provides, in pertinent part:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.